AO 91 (Rev. 02/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Patrick 'P' ZAMORA | ) | Case No. |
| XX/XX/XX95 | ) | |
| XXX-XX-2150 | ) | 16mj 2895 |
| Defendant | | |

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUL 13 2016

MATTHEW J. DYKMAN
CLERK

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of  06/20/2016  in the county of  Bernalillo  in the _____ District of  New Mexico , the defendant violated  Title 21  U. S. C. §  841(a) , an offense described as follows:

On June 20, 2016, Patrick ZAMORA distributed approxiamtely 116.8 grams of methamphetamine in violation of Title 21 U.S.C 841(a).

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Russell Johnson, Special Agent, ATF
Printed name and title

Sworn to before me and signed in my presence.

Date:   07/12/2016

_____
Judge's signature

**KAREN B. MOLZEN
U.S. MAGISTRATE JUDGE**
Printed name and title

City and state:   Albuquerque, New Mexico

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Russell Johnson, being duly sworn, hereby declare and state:

## I. INTRODUCTION

1. I am a Special Agent (SA) with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since November 13, 2005. I am presently assigned to the ATF Oxford Field Office in Oxford, Mississippi, and working on assignment in Albuquerque, New Mexico, and surrounding area. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). I was trained as an ATF Special Agent at the Federal Law Enforcement Training Center in Glynco, Georgia.

2. As an ATF Special Agent, I have participated in federal investigations involving the distribution of controlled substances as well as federal firearms violations. During these investigations, I have participated in various types of investigative techniques, to include electronic surveillance, undercover agents and informants, and controlled purchases of firearms and narcotics from suspects. I have participated in physical surveillance operations and have participated in the execution of federal arrest and search warrants. In addition to utilizing the aforementioned investigative techniques, I have been required during these investigations to analyze information resulting from traditional record searches, as well as reviewing previous case files.

3. This affidavit is made in support of a criminal complaint and arrest warrant for Patrick "P" ZAMORA, for violations of Title 21 U.S.C. § 841(a), Distribution of a Controlled Substance- Methamphetamine.

1

4.      Because this affidavit is being submitted for the limited purpose of establishing probable cause for the arrest of ZAMORA, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only those facts that I believe are necessary to support the lawful arrest of ZAMORA. The statements contained in this affidavit are based on information provided to me by law enforcement officers as well as my training, experience, and knowledge of this investigation.

## II.     PROBABLE CAUSE

5.      On June 20, 2016, an undercover ATF Special Agent (UC/SA), along with ATF Confidential Informant (CI) 2478, met with two (2) unnamed codefendants (herein after referred to as S1 and S2) and a Hispanic male who introduced himself as "P." "P" was later identified as Patrick ZAMORA (herein after referred to as ZAMORA) for the purpose of purchasing approximately four (4) ounces of methamphetamine. The CI and S1 engaged in a series of text messages before the transaction to arrange the purchase.

6.      On this same date, S1 met the UC/SA and CI at an Allsup's gas station located at the intersection of Zuni Road SE and Indiana Street SE, in Albuquerque, NM. S1 instructed the UC/SA and CI to follow him and both vehicles then departed. S1 then drove to an apartment complex at 500 Indiana Street SE. S1 exited his vehicle and entered an apartment and the UC/SA and CI stayed in the undercover vehicle (UCV). S1 exited the apartment and informed the UC/SA and CI that the source of supply (SOS) for the methamphetamine was almost to their location. The UC/SA asked S1 if the SOS was the same SOS from the previous transactions which occurred between the UC/SA and CI and S1 and S2, to which S1 answered yes. S1 stated that since the UC/SA and CI ordered four (4) ounces of methamphetamine, that it is "different." It should be noted, there were three (3) previous transactions involving S1 in which S1 sold one

2

(1) ounce, one (1) ounce, and two (2) ounces of methamphetamine to the UC/SA and CI. S2 participated in two (2) of the aforementioned transactions.

7.  A short time later, a red Kia sport utility vehicle arrived at the location and a Hispanic male (later determined to be ZAMORA) exited and walked into the same apartment S1 had previously entered. After ZAMORA entered the apartment, S1 exited the apartment and waved towards the UC/SA and CI and instructed them to enter the apartment. S1 advised the UC/SA and the CI that the SOS was "chopping it up." When the UC/SA and CI entered the apartment they encountered S2. ZAMORA the produced a Ziploc bag containing the suspected methamphetamine and began placing approximately two (2) ounces of methamphetamine on a digital scale.

8.  The UC/SA then handed S1 $2,400 in pre-recorded ATF funds. ZAMORA asked the UC/SA if he wanted to confirm the weight of the methamphetamine and the UC/SA then walked to the digital scale and verified the weight of the methamphetamine was correct. S2 asked the UC/SA and the CI if they got "high," to which both said no. ZAMORA stated he liked to get high with new people as a precaution. At this same time, ZAMORA began weighing two (2) additional ounces of methamphetamine to complete the four (4) ounce transaction. ZAMORA had an additional bag of suspected methamphetamine and had to retrieve methamphetamine from that bag to achieve the two (2) ounces for the second Ziploc bag. S1 retrieved the methamphetamine from the digital scale and handed it to the UC/SA. S2 then escorted the UC/SA and the CI out of the apartment and back to the UCV.

9.  Following the operation, the suspected methamphetamine was tested and tested positive for the presence of methamphetamine and was weighed, weighing approximately 116.8 grams.

## III.  CONCLUSION

9.      Based on my training and experience, and the foregoing facts, I believe that probable cause exists that Patrick "P" ZAMORA, possessed a controlled substance with intent to distribute, methamphetamine, in violation of Title 21 U.S.C. § 841(a).

Under penalty of perjury, I swear that the foregoing is true and correct to the best of my knowledge, information, and belief.

```
                                          _____
                                          Russell Johnson, Special Agent
                                          Bureau of Alcohol, Tobacco, Firearms and
                                          Explosives
```

SWORN BEFORE ME
ON  July 13th           , 2016.

_____
HONORABLE Karen Molzen
UNITED STATES MAGISTRATE JUDGE

4